# In the United States Court of Federal Claims

No. 12-442V
(Filed Under Seal: March 31, 2014)[1]
(Filed for Publication: July 30, 2014)

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| ZOHREH GERAMI, a Married Woman, | National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10 et seq.; Diphtheria-Pertussis-Tetanus Vaccine; Off-Table Injury; Six-Month Residual Effects Requirement; Insufficient Evidence; Unpersuasive Medical Evidence. |
| Petitioner, | |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

Cyrus Meshki, Law Office of Cyrus Meshki, APC, 10866 Wilshire Boulevard, Suite 400, Los Angeles, California, 90024, for Petitioner.

Darryl R. Wishard, United States Department of Justice, Civil Division, Torts Branch, P.O. Box 146, Benjamin Franklin Station, Washington, District of Columbia 20044, for Respondent.

## OPINION

This case comes before the Court on Zohreh Gerami's motion for review of the Special Master's decision dismissing her petition for compensation under the National Childhood Vaccine Injury Act ("Vaccine Act"), 42 U.S.C. § 300aa-10 et seq. (2006), for insufficient proof. After receiving the diphtheria-pertussis-tetanus ("DPT") vaccine, Ms. Gerami suffered skin irritation, a rash, insomnia, cellulitis, and anxiety, and filed suit under the Vaccine Act seeking compensation for an off-table injury. Because Petitioner failed to demonstrate that her injuries persisted for six months after her vaccination, the Court affirms the ruling of the Special Master.

---

[1] Pursuant to Vaccine Rule 18 of the Rules of the United States Court of Federal Claims, the Court issued its opinion under seal to provide the parties an opportunity to submit redactions. Neither party filed proposed redactions. Accordingly, the Court publishes this opinion.

## Background

**Ms. Gerami's Medical History**

On November 27, 2011, Ms. Gerami, then age 61, received a DPT vaccine at a clinic in a Rite-Aid store in San Rafael, California.

Three days later, on November 30, 2011, at 9:42 p.m., Ms. Gerami was admitted to the Emergency Room ("ER") of Marin General Hospital in California with the "chief complaint" of right arm pain. Pet'r's Notice of Filing Docs. ("Pet'r's Add'l Docs. #4") Ex. 11, Jan. 8, 2013.

The physician who saw Ms. Gerami, Dr. Gash-Kim, noted that she had a temperature of 100.3 degrees Fahrenheit and "increasing redness" that had "spread distally" from the DTP injection site on her right arm. Id. Ex. 12. The doctor referred to Ms. Gerami's injury as "right upper extremity cellulitis," noted its size as 15 centimeters, prescribed her medications, and instructed her to return to the ER in 24 hours or sooner "for repeat evaluation." Id. Ms. Gerami was discharged at 2:42 a.m. on December 1, 2011.

On December 2, 2011, Ms. Gerami returned to the ER where Dr. Neill evaluated her. He noted that she "complain[ed] of local itching" but did not report "fever, shaking chills, vomiting or other systemic symptoms." Id. Dr. Neill's charts list "local reaction to vaccine versus cellulitis" as the "impression," and reflect that Ms. Gerami was discharged in "satisfactory stable condition." Id.

Ms. Gerami, a resident of the United States and Canada, returned to Quebec, Canada, and visited Dr. Naimi who had been her primary care physician since 1988. The first entry in Dr. Naimi's records is dated May 12, 2008—more than three years before the vaccine—and states that she "present[ed] with anxiety disorder due to [illegible]."[2] Pet'r's Notice of Filing Docs. ("Pet'r's Add'l Docs. #5") Ex. 14 at 31, Mar. 4, 2013. On May 1, 2011, almost seven months before her vaccination, Ms. Gerami received a complete physical, and Dr. Naimi's charts listed her "problems" as periodic anxiety, menopause, Raynaud's disease, and a fungal infection of the toes.

Within Dr. Naimi's medical records, separate from the charts, is a form dated February 15, 2012—almost three months after the vaccine. Entitled "psychiatric evaluation," the form indicates that Ms. Gerami exhibited anxiety and mentions redness on the right arm, but does not reference the vaccine. Id. at 40-41.

The first post-vaccine entry in Dr. Naimi's medical charts is dated April 19, 2012, and reflects blood pressure measurements and other metrics and states that "she stopped smoking." Id. at 32. No reference is made to either the vaccine or her ER visits. On May 22, 2012, Ms. Gerami again visited Dr. Naimi, and his notes reflect that she was worried about why she was taking certain medications. Again, Dr. Naimi makes no mention of the ER visits, vaccine, or

---

[2] Though Dr. Naimi, in his letter dated October 10, 2012, relates that he has been Ms. Gerami's doctor since 1988, the medical records in this case only date back to 2008.

alleged vaccine effects.  On October 2, 2012, Ms. Gerami "present[ed] for [follow-up]," and the charts indicate "high anxiety."  Id. at 33.

Dr. Naimi's medical chart entries for Ms. Gerami on October 23, 2012, November 21, 2012, and January 7, 2013, do not reference anxiety, the ER visits, or the vaccine effects.  The other records, however, contain a form entitled "COMPLETE MAJOR PHYSICAL" dated November 21, 2012, listing "Medical – HERPES ZOSTER May 10, 2012; – cellulitis post vaccination Rt Upper Ext. Nov. 30, 2011" under the category "Past Medical History." Id. at 42.  Under the "Problems" section, the form lists only: "1. Hypertension.?! 2. Multinodular Thyroid 3. R/o Hyperthyroidism." Id. at 43.

In addition to medical charts and forms, the record before the Special Master contained three letters from Dr. Naimi and Ms. Gerami's affidavit.  In her affidavit, dated November 12, 2012, Petitioner related that "immediately after vaccination, [she] experienced symptoms such as severe skin irritation, rash, insomnia, and depression.  The scars on [her] skin persisted for several months thereafter . . . [and other] symptoms persisted for nearly seven (7) months.  To date, [she] still suffers from the residual effects of [the] skin anomaly." Pet'r's Notice of Filing Docs. ("Pet'r's Add'l Docs. #2") Ex. 9, Nov. 15, 2013.

In his first letter, dated October 10, 2012, Dr. Naimi outlines Ms. Gerami's medical conditions since 2008 and prior to the vaccination, listing fibrocystic breast disease, varicose veins and varicosity, duodenitis "with a positive result for H. Pylori," vulvitis, and perianal fungal infection.  Restated Claim Ex. 4, at 2.

In his second letter, dated November 27, 2012, with the subject designated as "[m]edical report from January 2011 to November 25, 2012," Dr. Naimi states that on February 15, 2012:

> [T]he patient complained of having anxiety due to a vaccination in California.  Soon after vaccination, her right arm (site of vaccination) developed swelling, redness, pain . . . 'cellulitis'? . . . Since that time she had been suffering from insomnia, restlessness, and irritability.  She was tense and fatigued.
>
> ***
>
> Her somatic symptoms: BP 149/90 (this was high for the first time, due to stress), and had Trachycardia and mild tremors.
>
> ***
>
> Her blood chemistry and urine analysis were normal.  Slight sensitivity and redness were observable on her right arm.

Pet'r's Notice of Filing Docs. ("Pet'r's Add'l Docs. #3") Ex. 10, Nov. 27, 2012.  Dr. Naimi's second letter also notes that "[o]n May 10, 2012, the patient developed a Herpes Zoster and was treated for it" and that on November 21, 2012, a complete physical evaluation revealed normal lab results and "[n]o other findings." Id.

3

The third letter from Dr. Naimi, dated June 20, 2013, states in full:

> In response to [Petitioner's counsel's] request, this is to state that following Ms. Gerami's injection (vaccination) in California, she developed, at the site of injestion [sic], certain symptoms which persisted over 6 months, and started fading away over 6 months. But her psychological problems (anxiety disorder) lasted almost a year.

Pet'r's Notice of Filing Docs. ("Pet'r's Add'l Docs. #6") Ex. 15, June 25, 2013.

## Procedural History

### The Record before the Special Master

On July 13, 2012, Ms. Gerami filed a petition for compensation under the Vaccine Act. On September 6, 2012, the Special Master held a status conference and entered an Order the following day instructing Petitioner to "file all outstanding records." Gerami v. Sec'y of Health & Human Servs., No. 12-442V, Slip Op. at 2 (Fed. Cl. Spec. Mstr. Oct. 11, 2013) ("Opinion").

On November 1, 2012, Petitioner filed a "Restated Claim for Damages" and, concurrently, proof of vaccination, hospital records, medical bills, and a letter from Dr. Naimi. Respondent filed, on November 2, 2012, a status report noting that Petitioner had not filed the supporting documents required by the Vaccine Act and sought "[p]roof that petitioner's alleged vaccine injury lasted for more than 6 months." Resp't Status Report 1-2, Nov. 2, 2012.

On November 27, 2012, Petitioner filed Dr. Naimi's second letter summarizing Ms. Gerami's medical history from 2011 to 2012. Pet'r's Add'l Docs. #3.

On November 28, 2012, the Special Master held a status conference and entered an Order directing Petitioner to file "all outstanding records identified by respondent as soon as reasonably possible" and encouraging Petitioner's counsel "to file a motion for subpoena authority." Order, Nov. 29, 2012.

On January 8, 2013, Petitioner filed proof of vaccination, the hospital's transcription of its records, and the previously filed second letter from Dr. Naimi. The next day, Respondent filed another status report seeking "[p]roof that petitioner's alleged vaccine injury lasted for more than 6 months" and "treatment records for petitioner's . . . 'lingering skin anomaly'." Resp't. Status Report 2, Jan. 9, 2013.

On February 1, 2013, the Special Master held a third status conference and entered an Order stating that "Petitioner shall file the medical records identified by respondent as soon as reasonably possible. **Petitioner's attorney is strongly encouraged to file a motion for subpoena authority**." Order, Feb. 1, 2013 (emphasis in original).

On March 4, 2013, Petitioner filed hospital records from the two visits to the ER she made following her vaccination.

4

On April 12, 2013, the Special Master held a fourth status conference "to discuss the completeness of the medical records . . . ." Order, Apr. 12, 2013. On May 10, 2013, Respondent filed her position statement known as a "Rule 4 Report" positing that Petitioner had not submitted sufficient medical records to demonstrate that she met "the six-month residual effects requirement for a vaccine-related injury under the Act." Opinion at 3; Resp't's Vaccine Rule 4 Report 6, May 10, 2013.

On May 30, 2013, the Special Master held a fifth status conference. As reflected in the Order memorializing his rulings, "petitioner agreed to submit a status report identifying medical records that show petitioner met [the six month] requirement. . . . by Monday, July 1, 2013." Opinion at 3; Order, May 31, 2013. In response to this Order, on June 25, 2013, Petitioner filed a single document—the third letter from Dr. Naimi concluding that Ms. Gerami's injuries lasted longer than six months.

On July 16, 2013, the Special Master held the sixth and final status conference. Respondent contended that, despite Dr. Naimi's third letter, there was still no evidence that Petitioner suffered residual vaccine effects longer than six months. The Special Master entered an Order on July 18, 2013, memorializing: "At the conclusion of the status conference, petitioner requested that her case be submitted to the [Special Master] for adjudication." Order, July 18, 2013. Though Petitioner requested an adjudication, the Special Master kept the record open to permit additional submissions and ordered the following:

> 1. By Friday, August 16, 2013, respondent may file any additional materials or information she wishes the undersigned to consider.
>
> 2. Petitioner shall consider whether she would like to file any additional materials (for example, photographs) or information. Additionally, petitioner will be afforded the opportunity to respond to any materials or information filed by respondent.

Id. (emphasis omitted).

On July 18, 2013, Respondent filed a status report stating: "Respondent concurs that the Special Master proceed to rule on the record as requested by petitioner, but asks that this ruling be limited to the issue of whether petitioner has demonstrated that she suffered her alleged injury for the six month period required by the Vaccine Act." Resp't's Status Report, July 18, 2013. Though the Special Master's Order permitted Petitioner to respond to this status report, Petitioner did not do so. Neither Petitioner nor Respondent filed any additional evidence.[3]

**The Special Master's Opinion**

On October 11, 2013, the Special Master issued a decision denying compensation and

---

[3] From the record, it appears that Petitioner did not request an evidentiary hearing, never sought to put forth testimony from a doctor, and never sought authority to subpoena additional medical evidence. Opinion at 3 n.3.

dismissing the case for insufficient proof, concluding that Petitioner "failed to prove by preponderant evidence that her allegedly vaccine-caused injuries persisted for longer than six months, as required by the Vaccine Act." Opinion at 1, 7. Since Ms. Gerami received the DTP vaccine on November 27, 2011, the Special Master concluded that Ms. Gerami needed to show vaccine-induced effects past May 27, 2012.

The Special Master observed that the last symptoms of cellulitis and anxiety were recorded on February 15, 2012, and that Ms. Gerami's medical charts reveal that she suffered from anxiety prior to the DTP vaccine. The Special Master stated that Dr. Naimi's April 19, 2012 progress note and November 21, 2012 medical physical report did not mention any lingering vaccine-related symptoms and that the November 21, 2012 report included "post vaccine cellulitis" in the "past medical history" category. Id. at 4-5. The Special Master ultimately concluded that a "review of petitioner's medical records reveals no support for her claim that her allegedly vaccine-caused injuries persisted for longer than six months." Id. at 6.

The Special Master also addressed Dr. Naimi's second and third letters. The Special Master noted that Dr. Naimi's second letter listed the February 15, 2012 complaint of post-vaccination anxiety and cellulitis, but that the reports of the subsequent visits did not mention any of the alleged post-vaccine symptoms. The Special Master related that, in response to the Order directing Petitioner to file a status report identifying medical records to support the contention that Ms. Gerami's injuries persisted for longer than six months, Petitioner submitted Dr. Naimi's third letter. Though the third letter asserts that Ms. Gerami's symptoms lasted for longer than six months, the Special Master did not find the letter persuasive, instead noting that "the letter is significant for its absence of citations to petitioner's medical records." Id. Explaining that statements from treating physicians are probative but not binding, the Special Master found the contemporaneously documented medical evidence more persuasive than the letter prepared for litigation purposes. Opinion at 6, n.6 (citing 42 U.S.C. § 300aa—13(b)(1)); see also Broekelschen v. Sec'y of Health & Human Servs., 618 F.3d 1339, 1346-49 (Fed. Cir. 2010). As such, the Special Master dismissed the case for insufficient proof.

**Petitioner's Motion for Review**

On November 12, 2013, Petitioner filed a motion for review of the Special Master's decision and attached additional evidence never previously filed. Pet'r's Mot. Review of Special Master's Decision ("Pet'r's Mot."), Nov. 12, 2013. The first attachment is a declaration of Ms. Gerami dated the same day as the motion for review, listing dates she experienced symptoms "as a direct consequence of the faulty vaccination." Id. at 6-7. The second attachment is a prescription for "Valacyclovir 500mg" dated May 10, 2012, directing Ms. Gerami to take the medication for seven days, with a handwritten note beside it stating "prescription for treatment of shingles." Id. Ex. 1. The third attachment contains several untranslated pages of notes in French dated May 10, 2012.

This Court held a telephonic oral argument on January 27, 2014. During argument Petitioner confirmed that she sought to overturn the Special Master's decision on the merits, was "not claiming any procedural infirmity in the process utilized by the Special Master," and was satisfied she "had an ample opportunity to present [her] case." Oral Arg. Tr. at 5, 12. The

parties represented that the only issue before this Court is "whether there was sufficient evidence in the record below on the merits to demonstrate that the Plaintiff had suffered this injury lasting more than six months." Id. at 7.

## Discussion

**Jurisdiction and Standard of Review**

This Court has jurisdiction under the Vaccine Act to review the decision of a Special Master upon a party's timely filed motion. 42 U.S.C. § 300aa-12(e)(2). After a party so moves, the Court "undertake[s] a review of the record of the proceedings" and may sustain, set aside, or remand the Special Master's decision. Id. The Court reviews a Special Master's findings of fact under the arbitrary and capricious standard, legal conclusions under the not in accordance with law standard, and discretionary rulings under the abuse of discretion standard. Id.; Turner v. Sec'y of Health & Human Servs., 268 F.3d 1334, 1337 (Fed. Cir. 2001); Cedillo v. Sec'y of Health & Human Servs., 89 Fed. Cl. 158, 167-68 (2009).

**The Vaccine Act's Requirement that Petitioner Prove the Residual Effects of Her Injuries Lasted More Than Six Months**

The Vaccine Act creates a Program authorizing individuals to seek compensation for injuries alleged to have been caused by a vaccine. 42 U.S.C. § 300aa-11(b); see Figueroa v. Sec'y of Health & Human Servs., 715 F.3d 1314, 1317 (Fed. Cir. 2013). The Act contains a "Vaccine Injury Table" listing certain vaccines, their corollary injuries, and time periods for the first symptom. 42 U.S.C. § 300aa-14. If a petitioner's alleged injury falls into one of these categories, then he or she is entitled to a presumption that the vaccine caused the injury. Id.; Turner, 268 F.3d at 1337. If an injury does not fall within the Vaccine Act's Injury Table, then a petitioner may still seek compensation for this "off-table" injury, but must prove causation in fact by a preponderance of the evidence. 42 U.S.C. § 300aa-13(a)(1)(A); Deribeaux v. Sec'y of Health & Human Servs., 717 F.3d 1363, 1367 (Fed. Cir. 2013); Turner, 268 F.3d at 1337. Ms. Gerami alleges an "off-table" injury.

The Vaccine Act limits eligibility for compensation, stating: "any person who has sustained a vaccine-related injury . . . may, if the person meets the requirements of subsection (c)(1), file a petition for compensation under the Program." 42 U.S.C. § 300aa-11(b)(1)(A). Subsection (c)(1) requires:

> (c) Petition content. A petition for compensation under the Program for a vaccine-related injury or death shall contain—
>
> (1) except as provided in paragraph (3), an affidavit, and supporting documentation, demonstrating that the person who suffered such injury or who died--

\*\*\*

> (D) (i) suffered the residual effects or complications of such illness, disability, injury, or condition for more than 6 months after the administration of the vaccine, or (ii) died from the administration of the vaccine, or (iii) suffered such illness, disability, injury, or condition from the vaccine which resulted in inpatient hospitalization and surgical intervention.

42 U.S.C. § 300aa-11.

In § 300aa-13, "Determination of Eligibility and Compensation," the Vaccine Act reemphasizes that proving the elements of § 300aa-11(c), including vaccine-related residual effects lasting longer than six months, are mandatory prerequisites for compensation, stating that:

> (1) Compensation shall be awarded under the Program to a petitioner if the special master or court finds on the record as a whole--
>
> (A) that the petitioner has demonstrated by a preponderance of the evidence the matters required in the petition by [§ 300aa-11(c)(1)] . . .

42 U.S.C. § 300aa-13(a). The Act, therefore, requires that the petitioner demonstrate by a preponderance of the evidence that she suffered the "residual effects" of her injury for "more than 6 months after the administration of the vaccine." See § 300aa-11(c)(1)(D)(i).

The Federal Circuit has explained that the eligibility requirements in § 300aa-11(c) are not mere pleading requirements or matters of proof at trial, but instead are "threshold criteri[a] for seeking entry into the compensation program." Black v. Sec'y of Health & Human Servs., 93 F.3d 781, 785-87 (Fed. Cir. 1996). In Black, the Federal Circuit affirmed a dismissal of a petition where the Court of Federal Claims stated:

> [T]his Court holds that the requirements of subsection 11(c) are indeed jurisdictional and that a potential petitioner must do something more than merely submit a petition and an affidavit parroting the words of the statute. He or she must submit supporting documentation which reasonably demonstrates that a special master has jurisdiction to hear the merits of the case.

Black v. Sec'y of Health & Human Servs., 33 Fed. Cl. 546, 550 (1995), aff'd., 93 F.3d 781 (Fed. Cir. 1996) (internal citations omitted).

Furthermore, the Federal Circuit has characterized the requirement that residual effects persist for more than six months after vaccination as "a condition precedent to filing a petition for compensation." Cloer v. Sec'y of Health & Human Servs., 654 F.3d 1322, 1335 (Fed. Cir. 2011), cert. denied, 2012 U.S. LEXIS 3093 (U.S. Apr. 16, 2012). The Circuit explained that "Congress included the 6 month petition requirement 'to limit the availability of the compensation system to those individuals who are seriously injured from taking a vaccine.' Thus, this provision, along with the other petition requirements, is intended to restrict eligibility to the compensation program." Id. (quoting H.R. Rep. No. 100-391(I), at 699 (1987), reprinted in 1987 U.S.C.C.A.N. 2313-1, -373). As directed by § 300aa-13 and precedent, the Special

Master determined Petitioner's eligibility by looking to the requirements in § 300aa-11(c)(1), specifically the six-month residual effects requirement.

Petitioner bears the burden of proving by a preponderance of the evidence that she meets the six-month residual effect requirement. Song v. Sec'y of Health & Human Servs., 31 Fed. Cl. 61, 65-66, aff'd, 41 F.3d 1520 (Fed. Cir. 1994). Petitioner contends that the evidence establishes that her vaccine-related injuries endured for longer than six months. It is telling, however, that the evidence upon which Petitioner relies was not submitted to the Special Master and therefore cannot be considered by this Court. Rather, Petitioner filed that evidence, her November 13, 2013 declaration and a prescription for medication for shingles, for the first time in this Court as exhibits to her motion to review. This new declaration lists dates of claimed vaccine symptoms. Pet'r's Mot. at 6-7. Petitioner further states that six months after her vaccination, in May 2012, she had an outbreak of shingles "as a direct consequence of the faulty vaccination performed nearly six months prior." Id. at 3, 7.[4] It would be error for the Court to consider new evidence presented for the first time in this Court. Vaccine Rule 8(f) makes clear that facts not raised before the Special Master are waived. See Vaccine Rule 8(f); Weddel ex rel. Weddel v. Sec'y of Health & Human Servs., 23 F.3d 388, 390 n.2 (Fed. Cir. 1994) (citing Vaccine Rule 8(f) in holding "The government correctly observes that the Weddels failed to raise before the Special Master the . . . arguments they now press. Congress has expressly forbidden us to consider such arguments."); see also 42 U.S.C. § 300aa-12(d)(3)(B) (empowering only Special Masters to take evidence); Oral Arg. Tr. at 26 (denying Petitioner's counsel's request to submit additional medical records).

Casting aside this new evidence, as the Court must, it is clear that on the record before him, the Special Master properly concluded that Petitioner failed to establish that the residual effects of her alleged vaccine-related injuries lasted for more than six months. Ms. Gerami's contemporaneous medical records—the ER documents, and Dr. Naimi's charts and forms—record symptoms of upper right arm pain, cellulitis, swelling, and redness immediately following the vaccine and lingering into her February 15, 2012 visit to Dr. Naimi, but this was less than three months after administration of the vaccine. No other contemporaneously recorded

---

[4] Though the medical records note that Petitioner had an outbreak of herpes zoster, i.e. shingles, Petitioner never alleged that shingles were a residual effect of the vaccine in her case before the Special Master. See Pet'r's Restated Claim; Resp't Resp. to Mot. for Review at 3, Dec. 4, 2013. Petitioner first articulated this allegation before this Court in her motion for review and its attachments.

At oral argument, counsel for Petitioner admitted that the shingles prescription was not before the Special Master and that Petitioner never submitted photographs of this injury or her scars. Counsel for Respondent stated that the Government never disputed that Ms. Gerami suffered shingles, but objected because it was never alleged to be a vaccine-induced injury. Oral Arg. Tr. at 18-19.

In any event, the prescription dated May 10, 2012, for shingles, falls short of demonstrating that Petitioner suffered residual vaccine effects beyond six months—May 27, 2012—since the prescription's last dosage was May 17, 2012.

documents note symptoms of upper right arm pain, cellulitis, swelling, and redness, beyond February 15, 2012. See Pet'r's Add'l Docs. #5, Ex. 15 (showing post-vaccination visit dates of February 15, 2012, April 19, 2012, May 22, 2012, October 2, 2012, October 23, 2012, November 21, 2012, and January 7, 2013). In fact, all later visits state "no complaint."

As the Special Master's opinion states, and as Petitioner recognizes, the only evidence before the Special Master that Ms. Gerami's alleged injuries persisted beyond six months is Dr. Naimi's third letter. Oral Arg. Tr. 8. In this letter, dated June 20, 2013—after commencement of this litigation before the Special Master—Dr. Naimi asserts that Ms. Gerami's symptoms persisted beyond six months, but does not explain his conclusion or account for the fact that his contemporaneously recorded medical records do not bear out this determination.

In finding this letter unpersuasive, the Special Master noted that it lacked any citation to the medical records. As the Special Master observed, Dr. Naimi's contemporaneous medical records covering the same time period fail to mention any lingering vaccine effects. In assessing the relative persuasiveness of the evidence, the Special Master afforded the contemporaneous medical records more weight than a physician's letter that responded to an attorney's request and made conclusory assertions without any citation to medical records. This is a sound exercise of the Special Master's discretion and comports with precedent. Broekelschen, 618 F.3d at 1346-49 (affirming the Special Master's holding in which he found a discharge summary more persuasive than post-hospitalization notes where the doctor who wrote the discharge summary "was able to consider all of [petitioner's] medical records" and the doctors who wrote the post-hospitalization notes "did not provide any reasoning for their statements."); see also, Song, 31 Fed. Cl. at 67-68 (affirming a Special Master's decision to accord little weight to a doctor's conclusion that the vaccine caused the alleged injuries where the doctor only made conclusory statements without explanation).

Petitioner also contends that the Special Master's decision is arbitrary and capricious because the record demonstrated that Petitioner suffered anxiety beyond six months. The contemporaneous records mention Ms. Gerami's anxiety symptoms on May 12, 2008, May 1, 2011, February 15, 2012, and October 2, 2012. The Special Master noted that Petitioner's medical charts reflected her anxiety on several occasions *before* she received the vaccine—indicating that the anxiety was not a residual effect of the vaccine and thus not a vaccine-related injury persisting for more than six months. Because the Special Master considered the contemporaneous medical records to be more persuasive than Dr. Naimi's third letter, he found that Petitioner did not offer a persuasive medical opinion to support her claims of vaccine-caused anxiety. Opinion at 6. The Special Master gave Petitioner multiple opportunities to submit such proof, but Petitioner opted not to avail herself of these opportunities.[5]

---

[5] Respondent consistently maintained that Petitioner failed to prove that her injuries persisted for longer than six months. The Special Master held six status conferences in which he pointedly raised these concerns, received all evidence Petitioner filed, and encouraged Petitioner to seek subpoena authority. Even after Petitioner requested adjudication on the existing record, the Special Master kept the record open for Petitioner to file additional documents. Petitioner declined to do so.

Petitioner has not demonstrated that the Special Master erred.  The Federal Circuit has explained that if the Special Master "has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate."  Hines ex rel. Sevier v. Sec'y of Health & Human Servs., 940 F.2d 1518, 1528 (Fed. Cir. 1991).

### Conclusion

Because Petitioner has not demonstrated that the Special Master's decision was arbitrary and capricious, not in accordance with law, or an abuse of discretion, this Court sustains his decision dismissing Ms. Gerami's petition for compensation under the Vaccine Act.

                                                   s/Mary Ellen Coster Williams
                                                   **MARY ELLEN COSTER WILLIAMS**
                                                   **Judge**